UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


**MIDDLESEX MUTUAL ASSURANCE** )
**COMPANY,** )
**Plaintiff** )
)
                v.      ) C.A. NO. 09-cv-30156-MAP
)
**PUERTA DE LA ESPERANZA,** )
**LLC,** )
**Defendant** )


MEMORANDUM AND ORDER REGARDING
CROSS-MOTIONS FOR SUMMARY JUDGMENT
(Dkt. Nos. 19 & 24)

June 29, 2010

**PONSOR, D.J.**

## I.   INTRODUCTION

On September 21, 2009, Plaintiff Middlesex Mutual Assurance Company brought suit against Defendant Puerta de La Esperanza, LLC, seeking a declaratory judgment to the effect that damage to Defendant's building is not covered by Defendant's insurance policy.  Defendant contests Plaintiff's interpretation of the policy and has filed a counterclaim alleging breach of contract, violation of the implied covenant of good faith and fair dealing, negligence,

and violation of Mass. Gen. Laws ch. 93A, §§ 2, 9, and 11. The case comes before the court on (1) Plaintiff's Motion for Summary Judgment seeking entry of a declaratory judgment that the damage at issue is not covered by the policy (Dkt. No. 19) and (2) Defendant's Cross-Motion for Summary Judgment seeking entry of a declaratory judgment that the policy covers the subject loss and for a judgment on liability regarding the Chapter 93A claim (Dkt. No. 24).

## II.  FACTS

On April 24, 2009, Defendant building owner submitted to Plaintiff insurance company a "Property Loss Notice" under Middlesex Mutual Assurance Company Business Owners Policy No. WA 0100028221 (the "Policy").  The Notice described damage to the covered property at 451-459 Main Street, Holyoke, Massachusetts.  Essentially, one wall had "settled" between six and ten inches, with resulting damage to floors, walls, plumbing fixtures, and other items.  (Dkt. No. 20, Pls.' Mem. in Supp. of Mot. for Summary Judgment 3.)

Defendant's engineer, a consultant at Tighe & Bond, Inc., reported that the damage occurred because a load-bearing brick pier had collapsed.  He concluded that the

pier collapsed because it was "overloaded by the dead and live loads (i.e., the weight of building components, people and personal property) applied from the upper floors." (Dkt. No. 23, Ex. 5, Letter from Francis J. Hoey III, Tighe & Bond, Inc., Regarding Structural Assessment of Existing Conditions at 451-459 Main Street.)

Plaintiff's engineer, Peter Reynolds, reviewed the report by Tighe & Bond. He stated that he was in complete agreement with everything in it, including its conclusions. (Dkt. No. 22, Ex. A, Dep. Of Peter Reynolds 35, lines 2-9.)

On September 21, 2009, Plaintiff refused to pay for the damage to the building on the grounds that the failure of the pier (1) was not a "collapse" and (2) was not covered by the Policy. The Policy defined "collapse" as follows:

> Collapse means an abrupt falling down or caving in
> of a building or any part of a building with the
> result that the building or part of the building
> cannot be occupied for its intended purpose[.]

(Dkt. No. 22, Ex. D at 43 (Bates #000042), Policy § I(A)(5)(d)(1)(a).) Once any set of renovations or repairs on a building was completed, the Policy covered collapse resulting from those repairs only if such collapse were caused "in part" by any of certain listed causes, including

3

the "weight of people or personal property."  (Id. Policy §§ I(A)(5)(d)(2)(f) and (d).)

## III.  DISCUSSION

Plaintiff seeks a declaratory judgment that the Policy did not cover the loss at issue because the pier's failure was not a "collapse" as the Policy defined the term. Defendant cross-moves for summary judgment on the same issue, arguing that (1) the failure of the pier was a "collapse" as defined in the Policy and (2) that the collapse was covered by the Policy because it resulted, at least in part, from the weight of people and property.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); Shepley v. Johnson & Johnson (In re Pharm. Indus. Average Wholesale Price Litig.), 582 F.3d 231, 236 (1st Cir. 2009) (internal citations omitted).  In Massachusetts, the interpretation of an insurance policy is a question of law. Cody v. Connecticut Gen. Life Ins. Co., 439 N.E.2d 234, 237 (Mass. 1982), cited in Nelson v. Cambridge Mut. Fire Ins. Co., 572 N.E.2d 594, 596 (Mass. App. Ct. 1991).

The court will find that the failure of the pier was a "collapse" covered by the Policy. However, in light of the order to stay discovery issued by the Magistrate Judge on February 11, 2010, the court will deny Defendant's motion for summary judgment on the Chapter 93A claim as set forth in the counterclaim.[1] Accordingly, Plaintiff's motion will be denied and Defendant's motion will be allowed, in part, and denied, in part.

   A.   <u>Definition of Collapse</u>.

As noted, Plaintiff argues that what occurred at the Holyoke building was not a "collapse" as the Policy defined the term. Defendant argues that it was. The language at issue reads as follows: "Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose[.]" ((Dkt. No. 22, Ex. D at 43 (Bates #000042), Policy § I(A)(5)(d)(1)(a).) The word "part" is used twice in rapid succession, and the definition of "collapse" turns on the interpretation of the

---

[1] On February 11, 2010, Magistrate Judge Kenneth P. Neiman entered an order granting Defendant's Motion to Stay Discovery and Continue Trial on Counterclaim (Dkt. No. 17).

word "part."

Defendant argues that the term "part" can mean either an area or a component of the building and that where the Policy refers to an "abrupt falling down or caving in of a building or any part of a building," the broader meaning is intended.  Under Defendant's interpretation, the Policy would read "collapse means an abrupt falling down or caving in of a building or any part [i.e., any component] of a building with the result that the building or part [i.e., an area] of the building cannot be occupied for its intended purpose."  Because the pier is a component of the building, this broader definition would bring the instant collapse within the Policy's coverage.  Because the pier is not an area of the building, a narrower interpretation would place the collapse outside of the Policy's coverage.

Plaintiff argues for the narrower interpretation, construing the term "part" to refer solely to a physical area, as distinct from a structural component.  Plaintiff also argues that the broader alternative is incoherent because it uses the word "part" to mean two different things in the same sentence.

Plaintiff's argument is unpersuasive. In general, a "part" of a building may refer to any component of that building. For example, a wall is generally considered to be a part of a building. And it is well within the bounds of ordinary English usage to deploy a broadly defined word such as "part" in more than one way in the same document and even in the same sentence. The court will therefore find that the Policy defines "collapse" to encompass the falling down or caving in of a structural component and that the pier's failure was such a collapse.

Plaintiff also points to Massachusetts authority suggesting that "any substantial impairment of the structural integrity of a building" is not a collapse. <u>Clendenning v. Worcester Ins. Co.</u>, 700 N.E.2d 846, 848 (Mass. App. Ct. 1998). However, neither the facts of <u>Clendenning</u> nor the quotation cited is relevant to the issue before the court: namely, whether a structural element of a building may be a "part" of that building.

In <u>Clendenning</u>, workmen discovered carpenter-ant damage to a porch. Concerned that the porch seemed fragile, they investigated further and, having determined that the porch

was in imminent danger of collapse, they dismantled it immediately for safety reasons. The court found that the expenses associated with its demolition and repair were not covered under the "collapse" portion of the policy because the porch had not fallen down of its own accord. There was no dispute that the porch was a part of the building or that, if it had collapsed spontaneously (as the brick pier did here), the loss would have been covered. <u>Clendenning</u> is not applicable here.

    B.   <u>Causation</u>

The Policy covers a collapse only if it is caused "in part" by any of certain listed causes, including the "weight of people or personal property." (Dkt. No. 22, Ex. D at 43 (Bates #000042), Policy § I(A)(5)(d)(2)(f).) Plaintiff argues that the cause of the collapse is an issue of disputed fact and that Defendant cannot prove that the weight of people and personal property in the building contributed to the collapse.

Both parties' engineers agree that the weight of people and personal property did in fact contribute to the collapse. In the section of his report labeled

"Conclusions," Defendant's engineer found that the pier failed when it was "overloaded by the dead and live loads (i.e. the weight of building components, people and personal property) applied from the upper floors." (Dkt. No. 23, Ex. 5, Hoey Letter.) Plaintiff's engineer stated in his deposition that he was in complete agreement with everything in Defendant's engineer's report and specifically that he "agreed with their [i.e., Defendant's engineers'] conclusions." (Dkt. No. 22, Ex. A, Dep. of Peter Reynolds 35, lines 2-9.) Neither party has submitted any evidence that would contradict the conclusions of their engineers. Thus, on the evidence currently before the court, there is no dispute as to causation: the collapse of the pier was caused at least in part by the weight of people or property in the building. Because the policy covers a collapse resulting in part from the weight of people or property, the policy covers the loss at issue in this case.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. No. 19) is hereby DENIED, and Defendant's cross-motion for summary judgment (Dkt. No. 24)

is hereby ALLOWED to the extent that the court finds on the undisputed facts that the damage to Defendant's building was covered by Plaintiff's policy.  The cross-motion is DENIED with respect to Defendant's counterclaims based on the need to develop the record further through discovery.  The case is hereby referred to Magistrate Judge Kenneth P. Neiman for a status conference to lift the stay and set a final schedule for completion of pretrial proceedings, a final pretrial conference, and a trial date.

    It is So Ordered.

                                                   <u>/s/ Michael A. Ponsor</u>
                                                   MICHAEL A. PONSOR
                                                   U.S. District Judge