UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS


MIDDLESEX MUTUAL ASSURANCE   )
COMPANY,                     )
        Plaintiff            )
                             )
              v.             ) C.A. No. 09-cv-30156-MAP
                             )
PUERTA DE LA ESPERANZA,      )
LLC,                         )
        Defendant            )


             MEMORANDUM AND ORDER REGARDING
             CROSS MOTIONS FOR SUMMARY JUDGMENT
                    (Dkt. Nos. 56 & 58)

                      April 11, 2011


PONSOR, D.J.

                    I.   INTRODUCTION

    On August 24, 2009, a building complex owned by

Defendant/Plaintiff-in-Counterclaim Puerta de La Esperanza,

LLC ("Puerta") at 451-459 Main Street in Holyoke suffered

damage when a load-bearing brick pier collapsed.  Puerta

immediately sought coverage from its insurer, Plaintiff/

Defendant-in-Counterclaim Middlesex Mutual Assurance Company

("Middlesex").[1]  On September 21, 2009, Middlesex Vice

---

    [1] The insurance policy at issue is the Middlesex Mutual
Assurance Company Business Owners Policy No. WA 0100028221,
for the policy period April 1, 2009, through April 1, 2010

President Ben Spike sent a letter to Puerta, stating that a licensed engineer had inspected the premises and that "we have determined that the Policy does not provide coverage for the claimed loss and damages." (Dkt. No. 57, Ex.1.) The letter continued, "In addition, it is our view that it would be appropriate under the circumstances to obtain a judicial determination of the coverage issues presented by this claim." (Id.) Enclosed with the letter was a copy of the complaint that Middlesex had filed on that same date in this court seeking a declaratory judgment to the effect that damage to Puerta's building was not covered by its insurance policy. (Dkt. No. 1.)

In response, Puerta filed a counterclaim seeking a declaratory judgment to the effect that the damage was covered by the policy and alleging breach of contract (Count I), violation of the implied covenant of good faith and fair dealing (Count II), violation of Mass. Gen. Laws ch. 93A, §§ 2, 9, and 11 (Count III), and negligence (Count IV). (Dkt. No. 8.) The parties filed cross motions for summary judgment on the declaratory judgment counts only, and, in June 2010, the court allowed Puerta's motion, ruling that

---

(the "Policy"). (Dkt. No. 37, Ex. 1.)

the policy in question did cover the damage. Middlesex Mut. Assur. Co. v. Puerta de la Esperanza, LLC, 723 F. Supp. 2d 294 (D. Mass. 2010).

With this threshold issue decided, the court set a trial date of February 7, 2011, for Puerta's counterclaims. As the trial date drew nearer and the parties began to submit motions in limine, it became clear to the court that several critical legal issues required resolution before a jury could hear the case. Accordingly, on February 4, the court held a pretrial conference with the parties, at which time the trial was postponed, and a summary judgment schedule was established to narrow the remaining legal disputes.

Now before the court are Puerta's motion for partial summary judgment on Count I (Dkt. No. 56) and Middlesex's motion for partial summary judgment on Counts I, II, and IV (Dkt. No. 58). At the hearing on these motions, Puerta stipulated to a dismissal of the negligence claim, Count IV. For the reasons that follow, the court will allow Puerta's motion for summary judgment on Count I and will allow Middlesex's motion for summary judgment on Count II. The court will also address Count III, the chapter 93A claim, as well as several issues related to damages.

## II. FACTS

After this court issued its declaratory judgment finding that the Policy did indeed cover the loss, the parties were unable to reach agreement either on the amount of loss or on the method of payment. Puerta insisted that Middlesex's breach required it to pay the cost of repairs forthwith. Middlesex asserted that the Policy's "replacement cost" provision required Puerta to repair the damage first and seek payment after.[2]

In November 2010, Middlesex suggested mediation through the judicial system. Puerta, however, declined to enter into mediation on the ground that Middlesex's refusal to acknowledge that its wrongful denial of coverage was a breach of the Policy precluded the parties from achieving resolution through mediation. (Dkt. No. 61, Ex. 1, Atty. Diviacchi Aff. ¶ 3.)

## III. DISCUSSION

A central issue in this case, vigorously disputed by the parties, is whether Middlesex breached the Policy when it denied coverage of the loss. Puerta contends that, in light of the court's ruling that the loss was covered,

---

[2] The Policy includes the following provision: "We will not pay on a 'replacement cost' basis for any loss or damage . . . until the lost or damaged property is actually repaired or replaced . . . ." (Dkt. No. 34, Ex. 1.)

Middlesex's wrongful denial of coverage constituted a breach of the insurance contract and had the effect, as a matter of law, of relieving Puerta of any of its reciprocal duties described in that contract. Middlesex argues that, even if the decision was incorrect, its denial of coverage was <u>not</u> a breach since it simultaneously came to this court in good faith to seek judicial guidance in the form of a declaratory judgment as to whether the Policy in fact did cover the losses. Middlesex further argues that Puerta's reciprocal duties under the terms of the contract survived any denial of coverage, even if that denial was incorrect, and Puerta had a duty pursuant to the Policy, among other things, to engage in certain preliminary appraisal proceedings prior to filing its counterclaims.

A. <u>Legal Standard</u>.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The burden then shifts to the opposing party who must demonstrate that a reasonable jury could return a verdict in its favor based on the evidence. <u>Id.</u> "A party opposing

summary judgment must present definite, competent evidence to rebut the motion." Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000) (citations omitted).

B.  Count I: Breach of Contract.

Middlesex takes the position that an insurance company may wrongfully deny coverage without liability for any breach of contract, so long as it simultaneously files a complaint for declaratory judgment seeking a blessing from a court upon its decision. If a court (affirmed, presumably, by an appellate court) finds definitively that the company's denial of coverage was a violation of the policy provisions, the policyholder may only bring a breach of contract claim if the company thereafter refuses to pay on the policy.

The notion that an insurance policy holder, in the face of a denial of coverage, is obliged in Massachusetts to successfully defend a complaint for declaratory judgment and incur unreimburseable legal fees before asserting any claim for breach of contract offends common sense. In signing an insurance contract an individual or entity takes on the responsibility to pay premiums and in return receives the benefit of insurance coverage. The premiums are not paid for the privilege of participating in a lawsuit. Put differently, a complaint for declaratory judgment does not vaccinate an insurance company against a claim for breach of

contract.

Massachusetts courts and the First Circuit have made this clear. As the Supreme Judicial Court of Massachusetts plainly stated, "[i]t is immaterial whether the insurer proceeds in good faith or in bad faith to avoid the duty to defend under a liability insurance policy because 'to impose upon the insured the cost of compelling his insurer to honor its contractual obligation is effectively to deny him the benefit of his bargain.'" Hanover Ins. Co. v. Golden, 766 N.E.2d 838, 840 (Mass. 2002) (quoting Rubenstein v. Royal Ins. Co., 708 N.E.2d 639 (Mass. 1999)). See also Ganias v. Arbella Mutual Ins. Co., Civ. No. 00WAD004, 2000 WL 869456, at *2 (Mass. App. Div. Jun. 14, 2000) ("Wrongful denial of coverage is clearly a breach which goes to the essence of an insurance contract . . . .").

In addressing similar claims under chapter 93A, the First Circuit has found that the initial wrongful denial of coverage, even where the insurer had some colorable legal justification for its denial, constituted a breach. In Commercial Union Insurance Company v. Seven Provinces Insurance Company, the First Circuit reviewed a district court's determination that the plaintiff was entitled to chapter 93A damages. 217 F.3d 33 (1st Cir. 2000). It first determined that, as here, the insurer had brought the

disputed issue of coverage to the district court, where the judge had correctly determined that the policy covered the damage in question. Having so concluded, the Court of Appeals turned to the chapter 93A claim to discern whether the defendant had engaged in additional conduct that would constitute a violation of chapter 93A because a "mere breach of contract does not constitute an unfair or deceptive trade practice under 93A." Id. at 40. The only rational inference to be drawn from this sequence of logic is that the First Circuit found a breach in these circumstances.[3]

Similarly, in New England Environmental Technologies v. American Safety Risk Retention Group, the plaintiff alleged breach of contract and violation of chapter 93A after the defendant denied its claim. Judge Gorton determined that the insurance policy covered the loss and, accordingly, allowed the plaintiff's motion for summary judgment on its breach of contract claim. However, because the court found no evidence of bad faith on the part of the defendant, the court denied the plaintiff's motion for summary judgment on

---

[3] With respect to the 93A claim, the court found "that this case did not involve a party whose only miscue was to decide (incorrectly, as matters turned out) to let the courts resolve a good faith disagreement." Comm'l Union Ins. Co., 217 F.3d at 28-29. Instead, the defendant's "obstructionist" conduct "had the extortionate quality that marks a 93A violation." Id.

8

its chapter 93A claim. New Eng. Envtl. Techs. v. Am. Safety Risk Retention Group, et al., 738 F. Supp. 2d 249, 259 (D. Mass. 2010).

It is thus clear that, regardless of Middlesex's intent, when Vice President Ben Spike sent a letter to Puerta in which he explicitly stated that "the Policy does not provide coverage for the claimed loss and damages," (Dkt. No. 57, Ex.1), he breached the contract between the parties. That established, the court will allow Puerta's motion for summary judgment on Count I and will deny Middlesex's motion for summary judgment on Count I.

C. Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing.

Middlesex has moved for summary judgment on Count II on the grounds that it never breached the contract. Given the court's ruling to the contrary, this argument fails. However, after thorough review of the record and having heard the parties arguments at multiple hearings, the court concludes that this case involves a breach of contract and nothing more.

In support of its claim for breach of the implied covenant, Puerta argues that at every possible juncture Middlesex wrongfully interpreted the Policy in favor of itself and to the detriment of Puerta. As the drafter of the insurance contract, Puerta argues, Middlesex was obliged

to tilt its interpretation of the policy in precisely the opposite direction, construing all ambiguous provisions in favor of Puerta. This distortion of its responsibility, according to Puerta, takes Middlesex's misbehavior beyond mere breach of contract.

In making this argument, Puerta asks the court to impose an obligation of construction on Middlesex that is properly reserved for the court. See Utica Mut. Ins. Co. v. Weathermark Invs., Inc., 292 F.3d 77, 80 (1st Cir. 2002) (noting that when the court is interpreting a contract, ambiguous terms "must be resolved against the insurer"); Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000) (general rule in Massachusetts is that policy interpretation is to favor insureds). Puerta cites no case law extending this duty to insurance companies, and the court has found none. This vacuum is not surprising given the potential for unfairness that might arise if a violation of the covenant of good faith and fair dealing were found to occur every time an insurer interpreted a contract in a manner favorable to itself.

For these reasons, the court will allow Middlesex's motion for summary judgment as to Count II.

D. <u>Count III: Violation of Mass. Gen. Laws, Ch. 93A</u>.

Neither party moved for summary judgment on Count III. However, as noted above, a 93A violation requires more than a breach of contract.  See Commercial Union Ins. Co., 217 F.3d at 40 ("[M]ere breach of contract does not constitute an unfair or deceptive trade practice under 93A."); Premier Ins. Co. v. Furtado, 703 N.E.2d 208, 210 (Mass. 1998) ("If an insurance company has a reasonable and good faith belief that it is not obliged to make a payment to a claimant who is asserting a violation of G. L. c. 93A . . . and offers to take active steps to resolve the dispute, the company's action, even if ultimately held to be based on a misinterpretation of the law, would not be an unfair settlement practice."); Gulezian v. Lincoln Ins. Co., 506 N.E.2d 123, 127 (Mass. 1987) ("An insurance company which in good faith denies a claim of coverage on the basis of a plausible interpretation of its insurance policy is unlikely to have committed a violation of G. L. c. 93A.").  On the current record, and with no motion seeking judgment on this count filed by either party, the court can make no ruling on the viability of this count.  If and when the case goes to trial, this count will be handled as a non-jury claim.

E. Damages.

The remaining issues between the parties concern damages.  Middlesex argues that Puerta should be precluded

from introducing evidence pertaining to replacement costs both because Puerta has not actually done any repairs and because Puerta has not engaged in the Policy's required appraisal process. Puerta contends that Middlesex's breach effectively terminated Puerta's duties under the contract and, thus, Middlesex is now required to pay, forthwith, the value of the replacement costs. As to mediation, Puerta argues both that the appraisal requirement applies only to fire damage and, if it does apply to this damage, Middlesex waived the requirement by failing to raise it until now.

    1.    <u>The Appraisal Provision</u>.

As required by Mass. Gen. Laws ch. 175, § 99, the Policy includes a "Standard Fire Policy Provision" that outlines an appraisal process. (Dkt. No. 37, Ex. 1 at 7.) The provision requires that where there is "a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men (sic)."[4] (<u>Id.</u>) The provision describes the process by which the parties engage three referees to determine the amount of loss and to issue a decision on a final cost of repair. (<u>Id.</u>)

---

[4] Middlesex took pains to clarify that this language mirrors the statute. Hopefully, at some point, the Massachusetts legislature will see fit to replace this embarrassingly anachronistic reference to "men."

Despite Puerta's argument to the contrary, it is clear from the text of the provision that it applies to the entire Policy and not solely to damages incurred by fire:

> Massachusetts law requires that the Suit, Appraisal and Cancellation provisions of the Massachusetts Standard Fire Policy <u>supersede any similar provisions contained in your policy</u>. Therefore, all LEGAL ACTION AGAINST US, APPRAISAL and CANCELLATION provisions, contained in your policy are void. The Suit Appraisal and Cancellation provisions of the Massachusetts Standard Fire Policy shall apply instead.

(Dkt. No. 37, Ex. 1 at 3 (emphasis added).) Furthermore, as to waiver, the provision expressly states:

> No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed <u>in writing</u> added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this company relating to appraisal or to any examination provided herein.

(<u>Id.</u> at 4 (emphasis added).)

Neither party has waived the requirement in writing nor has either party undertaken to fulfill it.[5] Puerta contends that Middlesex's failure to raise the requirement until the eve of the previously scheduled trial constitutes a waiver, as does its continued participation in this litigation.

The first time the court learned of the existence of this appraisal process was in a motion <u>in limine</u> that

---

[5] Although Middlesex made a general attempt to mediate this <u>case</u> in November 2010, there is no evidence that Middlesex attempted to mediate the amount of damages pursuant to the process outlined in the Policy.

Middlesex filed on December 17, 2010, just prior to the initial trial date. (Dkt. No. 37.) Middlesex's strategy is baffling, given that, by the terms of the provision, "such reference [i.e., appraisal proceeding], unless waived by the parties, shall be a condition precedent to any right of action in law or equity to recover for such loss." (Id. at 7 (emphasis added).) Despite Middlesex's tardy invocation of the contract term, "the court is bound to interpret and enforce contracts to which both parties freely agree in accordance with their plain language." Essex Ins. Co. v. Tri-Town Corp., 868 F. Supp. 38, 41 (D. Mass. 1994). As noted above, the parties' contract expressly states that "[n]o provision . . . shall be held to be waived by any requirement or proceeding on the part of this company relating to appraisal or to any examination provided for herein." (Dkt. No. 37, Ex. 1 at 4.) This language appears unambiguously to permit Middlesex to engage in the present litigation without waiving its right to raise the appraisal process requirement at any time.

"When the policy language is plain and admits of only one reasonable construction, a reviewing court must give effect to that construction." Lexington Ins. Co. v. Gen. Accident Ins. Co. of Am., 338 F.3d 42, 47 (1st Cir. 2003). Accordingly, by the terms of the contract, the parties must

engage in the appraisal process described within the Policy's Standard Fire Policy Provisions.  Moreover, until they do (or until the parties have waived -- in writing -- the appraisal requirement), Puerta may not bring suit against Middlesex to recover for the loss.  Given this, it would be premature to present the issue of the amount of loss to a jury.  According to the Policy, once the parties have engaged in the appraisal process, Puerta may not bring a suit against Middlesex "less than ninety days after a valid award has been made upon such reference [i.e., the appraisal process]" or the "award has been expressly waived by the parties."  (Dkt. No. 37, Ex. 1 at 5.)  Furthermore, any suit must be brought within two years of the date on which the loss occurred unless the appraisal proceeding has been commenced within those two years.  (Id.)  Applying this timeline, it appears that the parties must begin the appraisal proceeding before August 24, 2011, which is two years from the date on which the collapse occurred.

    2.   Puerta's Contractual Obligations.

Puerta argues that Middlesex's breach of contract excuses all of its obligations under the contract, including its obligations to cooperate with the appraisal proceeding and to repair the damage prior to being reimbursed, pursuant to the Policy's replacement cost provision.  It is true that

15

some authority appears to support this notion generally. See e.g., Dunkin' Donuts Inc. v. Gav-Stra Donuts, Inc., 139 F. Supp. 2d 147 (D. Mass. 2001) ("It is well-settled that a material breach of contract by one party excuses the other party from performance as a matter of law."). However, with respect to the specific duties at issue, Puerta remains contractually obligated to perform them.

    a. Appraisal Process.

As to the appraisal process, the law is clearly contrary to Puerta's position. Indeed, both the First Circuit and the SJC have determined that the Massachusetts legislature intended this term of the Standard Fire Policy Provision to survive a breach of contract. See McCord v. Horace Mann Ins. Co., 390 F.3d 138, 143 (1st Cir. 2004) ("Even though an insurer denies liability, the reference condition must be observed absent agreement as to the loss amount."); Employers' Liability Assurance Corp. v. Traynor, 237 N.E.2d 34, 34-35 (Mass. 1968) (holding in a declaratory judgment action that the policy covered the loss and requiring the parties to submit to the appraisal process because "[t]he prime purpose of the statute which requires Massachusetts standard fire insurance policies to contain language requiring the submission of disputes on amounts of loss to referees is to obviate just this type of proceeding and to expedite the equitable settlement of claims").

b. <u>Replacement Cost Provision</u>.

Puerta argues that Middlesex's breach excuses its contractual obligation to repair the damage prior to demanding reimbursement. As noted, the Policy includes the following provision: "We will not pay on a 'replacement cost' basis for any loss or damage . . . [u]ntil the lost or damaged property is actually repaired or replaced . . . ." (Dkt. No. 34, Ex. 1.) According to Puerta, should the court agree with Puerta's contention that Middlesex's breach effectively terminated Puerta's duties under the contract, Middlesex would be required to pay, forthwith, the value of the replacement costs. Middlesex's response is that the contract language is clear and must be enforced.

There is some authority supporting Puerta's position:

> It is a basic principle of contract law that once one party to a contract breaches the agreement, the other party is no longer obligated to continue performing his or her own contractual obligations. As a result, once the carrier has wrongfully denied coverage, an insured is no longer bound by the insurance policy's provisions governing cooperation, proof of loss statements, settlements with injured parties, [etc.]

Allan D. Windt, <u>Insurance Claims & Disputes</u>, § 3:10 (5th ed. 2010). <u>See also</u> <u>Ganias v. Arbella Mutual Ins. Co.</u>, Civ. No. 00WAD004, 2000 WL 869456, at *2 (Mass. App. Div. Jun. 14, 2000) ("Wrongful denial of coverage is clearly a breach which goes to the essence of an insurance contract which

justifies subsequent nonperformance by the insured."). However, this "basic principle" is difficult to apply where the non-breaching party still seeks to enforce its rights under the contract.

The court will thus fall back on what is, perhaps, the most fundamental of contract principles:

> One who fails to perform his contract is bound to make good all damages that result naturally from the breach. The other party is entitled to be put in as good condition pecuniarily as he would have been by the performance of the contract.

<u>Barrett Co. v. Panther Rubber Mfg. Co.</u>, 24 F.2d 329, 337 (1st Cir. 1928). The remedy for Middlesex's breach is that Middlesex is required to perform under the contract that was entered into by the parties. On the one hand, Middlesex must now put Puerta "in as good condition pecuniarily" as it would have been in had Middlesex never disavowed liability, including covering the damage due to the initial collapse as well as losses suffered as a result of the breach. On the other hand, Puerta is not entitled to rewrite the Policy to its benefit. Thus, for example, the discretion given to Middlesex under the Policy to determine whether to: "(1) Pay the value of lost or damaged property" or "(2) Pay the cost of repairing or replacing the lost or damaged property" remains, as does Puerta's obligation to repair the damage prior to seeking replacement costs. (Dkt. No. 34, Ex. 1.)

## IV. CONCLUSION

For the foregoing reasons, Puerta's motion for summary judgment on Count I (Dkt. No. 56) is hereby ALLOWED, and Middlesex's motion for summary judgment (Dkt. No. 58) is hereby DENIED as to Count I and ALLOWED as to Count II. Count IV is dismissed by agreement of the parties. As to the remaining issues, for the reasons stated above, the court will withhold any action pending compliance with the Policy's "appraisal" process. Counsel will submit a status report regarding the progress of this process no later than July 15, 2011.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge